RLF in hand
1/13/17

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX, ss

No. 17-CV-00017

Samira Trust, Plaintiff(s)

v.

Harvard University, Defendant(s)

A TRUE COPY ATTEST
DEPUTY SHERIFF
Middlesex County
DATE OF SERVICE 1-13-17

## SUMMONS

To the above-named Defendant: Harvard University

You are hereby summoned and required to serve upon Suzanne L. Herold, Herold Law Group, P.C. plaintiff's attorney, whose address is 285 Commandants Way, Chelsea, MA 02150, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center, Woburn, MA 01801 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at the 10th day of January, in the year of our Lord 2017.

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                                    SUPERIOR COURT
                                                                                  CIVIL ACTION NO.:

|  |  |
|---|---|
| SAMIRA TRUST | ) |
| Plaintiff, | ) |
| v. | ) |
| HARVARD UNIVERSITY | ) |
| Defendant. | ) |

## **COMPLAINT AND JURY DEMAND**

### Parties

1. The Plaintiff, Samira Trust (hereinafter "Ms. Trust" or "Plaintiff"), is an individual who maintains a residence in Boston, Suffolk County, Massachusetts.

2. The Defendant, Harvard University (hereinafter "University" or "Defendant") is for profit educational institution with a business address of 1350 Massachusetts Avenue, Suite 980, Cambridge, Middlesex County, Massachusetts.

### Facts

3. The University hired Ms. Trust as an Academic IT Supporter in November 2013.

4. As an Academic IT Supporter, Ms. Trust worked in two different locations on the University's campus: 53 Church Street Computer Lab ("Lab") and the Sever Grossman Library Computer Lab ("Library").

5. Specifically, Ms. Trust was hired to assist Oberde Falaise, ("Mr. Falaise") the Lead IT Supporter.

6. At the Lab, Ms. Trust reported to Pierre Julien ("Mr. Julien") and at the Library Ms. Trust reported to Many Frances Angelini ("Ms. Angelini").

7. Ms. Trust only had a physical office in the Library, and therefore only went to the Lab for specific projects / assignments / duties.

8. In Winter 2014 there was an organizational change in Ms. Trust's department and, as a result, the managers moved one step up. As a result, Mr. Falaise moved into the position of Assistant Manager and Mr. Julien became the Lab Manager.

9. Ms. Trust has never had any negative performance reviews and she has consistently met and exceeded her performance goals.

10. In Summer 2014 Ms. Trust applied for Mr. Falaise's vacant position (Academic IT Support Lead).

11. Ms. Trust was an obvious choice for the position because she had essentially been performing Mr. Falaise's job duties and responsibilities prior to his promotion.

12. Ms. Trust was not hired for the Lead position.

13. Instead, on information and belief, the University attempted to give the position to her colleague Matthew Woodward (Mr. Woodward"), who at that time was not qualified for the position.

14. As a result, the University did not fill the position.

15. In December 2014 two Lead positions were posted. Ms. Trust and her colleague, Matthew Woodward ("Mr. Woodward") both applied for the positions.

16. Despite having the same qualifications, approximately three weeks later in January 2015, Mr. Woodward was hired into a Lead position whereas Ms. Trust was not.

17. On or about March 6, 2015, Mr. Julien informed Ms. Trust that she would not be getting the Lead position, and instead an external candidate, also a male, would be getting the position.

18. On or about March 9, 2015 Mr. Julien changed his mind and informed Ms. Trust that she would be promoted. On information and belief, Mr. Julien only hired Ms. Trust into the Lead position because the University was aware that Mr. Julien had previously hired less qualified men for the positions that Ms. Trust should have been selected for.

19. Ms. Trust continued to experience gender bias and sex based discrimination after her promotion.

20. For example, in July and August 2015, Mr. Julien would consistently hold separate meetings with Ms. Trust to reiterate what he had already stated at staff meetings. On information and belief, Mr. Julien tried to control and exert his managerial power over her during these unnecessary one-on-one meetings.

21. In August 2015, Ms. Trust was scheduled to give her semester training to the Lab and Library for Assistants. One hour before her scheduled time, Mr. Julien substituted Greg Proulx, who was Ms. Trust's subordinate, to give the training.

22. For example, without reason or justification, in September 2015 Mr. Julien took her job responsibilities away from her and gave them to her male colleagues.

23. In September 2015 Ms. Trust was temporarily demoted and assigned to work as a User Assistant after her promotion to Academic IT Support Lead. The job of Academic IT Support Lead was to supervise the User Assistants.

24. The demotion and assignment of lesser work caused Ms. Trust feelings of humiliation, anger and stress.

25. Ms. Trust was also held to a higher standard and / or was required to follow different policies and procedures than her colleagues.

26. For example, in August 2015 Mr. Julien began to require Ms. Trust to get his approval from him each time she wanted to assign projects to her subordinates. Her male colleagues did not have this requirement.

27. For example, Ms. Trust was required to obtain permission from Mr. Julien in order to work overtime during the two week period before and after each semester. Ms. Trust's male colleagues did not have to get permission to work overtime during these periods.

28. In August 2015, without informing Ms. Trust, Mr. Julien stopped one of Ms. Trust's subordinates from working on a project that Ms. Trust had assigned. This resulted in Ms. Trust falling behind in her work. On information and belief, Mr. Julien did not stop the workflow of other User Assistants who were assisting Ms. Trust's male colleagues.

29. Furthermore, Ms. Trust earned less money than her male colleagues for doing the same work.

30. In January 2016 the University reclassified all of Ms. Trust's male colleagues from Grade 53 to Grade 55 and assigned them the title of IT Support Associate II. Ms. Trust's position was not reclassified and her pay grade remained at Grade 54. However, Ms. Trust's official job description remained the same as her male colleagues who received a raise.

31. Furthermore, Ms. Trust was not given her 2016 Cost of Living salary adjustment increase as guaranteed pursuant to her union agreement.

32. On information and belief, the Lab's nickname amongst the User Assistants is "penis culture" and is also known as the "boys club" amongst the librarians.

33. On August 31, 2015 Ms. Trust complained to the University about the gender bias and sex discrimination in an e-mail to the University's Human Resource department.

34. In addition, Ms. Trust attempted to discuss and resolve the gender bias and sex discrimination with Mr. Julien directly. Specifically, Ms. Trust sent two emails and attempted one face to face conversation, all of which Mr. Julien refused to engage in.

35. Pursuant to the University's handbook and policies, retaliation is prohibited.

36. Ms. Trust, Ms. Angelini, Mr. Julien and the University's Human Resources set up a meeting for October 19, 2015. Instead of listening to Ms. Trust's complaints and/or resolving the issue of gender bias, the University retaliated against Mr. Trust by issuing her a verbal warning about her alleged poor performance.

37. On information and belief, the intent of the verbal warning was to begin the progressive disciplinary process, pursuant to her collective bargaining contract, culminating in Ms. Trust's termination.

38. On October 26, 2015, Ms. Trust's disability of disc protrusion began.

39. As the result of her disability, Ms. Trust took four (4) sick days in three (3) months. Ms. Trust had the time (plus more) accrued in her sick bank. However, Ms. Trust was written up for "excessive absenteeism".

40. On information and belief, the University has no policy that articulates or defines what "excessive absenteeism" is considered to be.

41. Ms. Trust's male colleagues were not written up for taking sick days.

42. As result of Ms. Trust's complaint, Ms. Trust's daily flexible schedule, which had been the second shift from approximately 2:00/3:00 p.m. to 10:00/11:00 p.m. was changed to a traditional Monday – Friday, 9:00 a.m. to 5:00 p.m. schedule.

43. The schedule change thwarted Ms. Trust's ability to do her job because her department catered to evening students. The majority of the students' needs occurred in the afternoon and evening.

44. Furthermore, the schedule change exacerbated Ms. Trust's disability.

45. Furthermore, the non-flexible workweek exacerbated Ms. Trust's disability. Ms. Trust repeatedly asked for the flexible workweek as a reasonable accommodation, which the University denied.

46. Ms. Trust's male colleagues were permitted to work a flex schedule as they saw fit.

47. As a result of Ms. Trust's complaints and / or because of her "excessive absenteeism, she was singled out and required to report her arrival time to Mr. Julien and Ms. Angelini.

48. Ms. Trust's male, non-disabled colleagues were not required to report their arrival time to Mr. Julien.

49. In January 15, 2016 Ms. Trust applied for a medical leave pursuant to the Family Medical Leave Act ("FMLA") and leave pursuant to short term disability ("STD").

50. Ms. Trust was then written up for an alleged failure to follow up with the University's Family Medical Leave Act coordinator.

51. The verbal warning and the subsequent written warnings was a clear campaign to terminate Ms. Trust for her gender discrimination complaints and for exercising her right to take time off from work due to her disability.

52. On January 15, 2016 Ms. Trust formally complained, via email to the Dean of Harvard Extension School, Mr. Huntington Lambert. Dean Lambert, did not acknowledge Ms. Trust's email.

53. On February 26, 2016, while Ms. Trust was attempting to take a medical leave, the University emailed Ms. Trust about her leave requests. The University's email stated that her managers "were at the point of moving forward with the progressive discipline process" and intended to issue Ms. Trust a final written warning for failing to meet the University's expectations from the previous written warnings.

54. On March 1, 2016 Ms. Trust's medical leave was approved. In addition to 12 weeks of FMLA, Ms. Trust was approved for STD leave, for a total of 6 months of leave.

55. During her leave, the University continued to send threatening emails to Ms. Trust, stating that if she did not submit updated medical information from her specialist physicians within unreasonably short periods of time (i.e. 5 days) she would lose her job.

56. On information and belief, Harvard asked for updated medical information and threatened her job four (4) times in as many months.

57. On July 14, 2016 Ms. Trust's medical leave ended.

58. On July 15, 2016 Ms. Trust requested an unpaid leave and /or for Harvard to engage in the interactive process with her, while she and the University worked out a reasonable accommodation so that she could return to work.

59. On July 28, 2016 Ms. Trust proposed a variety of accommodations to the University including, but not limited to: continued unpaid leave, a treadmill desk, a flexible schedule, a gradual return to full-time work, telecommuting, an ergonomic chair and to return to workplace free from harassment.

60. Ms. Trust was cleared by her physician to return to work on August 29, 2016.

61. On August 29, 2016 Ms. Trust returned to her workplace in the Library, only to find that the University had changed the locks without letting her know.

62. Ms. Trust was ordered by Human Resources to leave the University and attend a meeting with Karen Millet, the University's Disability Services Consultant, which was scheduled for September 1, 2016.

63. In essence, Ms. Trust was forced to take an unpaid leave.

64. On September 9, 2016 Ms. Trust was told that she could return to work on September 13, 2016 but that all of Ms. Trust's proposed accommodations were denied, without explanation, rationale or any alternative suggestions from the University, with the exception of the ergonomic chair and a stand up desk.

65. On information and belief, the University has allowed other employees the accommodations of a flexible schedule, telecommuting, a gradual return to work and a harassment free workplace.

66. The University interfered with Ms. Trust's ability to rest and heal during her leave.

67. On information and belief, Ms. Trust communicated with the University hundreds of times about her leave during the time she was out.

68. Being forced to check her work email and communicate with the University, supply multiple medical updates or risk being terminated during her leave, caused Ms. Trust stress and anxiety.

69. Ms. Trust returned to work on September 13, 2016. That same day, Ms. Trust was told that her flexible workweek accommodation request had been denied because she had allegedly failed to provide enough medical documentation.

70. On September 14, 2016 she notified the University, through her managers, Human Resources and the Office of General Counsel, that she had filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD").

71. On September 15, 2016 Ms. Trust went to see her physician to obtain more medical documentation that would support her request for a flexible workweek as a reasonable accommodation.

72. On September 15, 2016, after Ms. Trust returned to work from her physician's appointment, the University terminated Ms. Trust.

73. Throughout her tenure with the University, Ms. Trust had absolutely no legitimate performance issues or complaints about her of any kind. Rather, Ms. Trust was respected and well-liked by her colleagues, librarians and subordinates.

74. Ms. Trust continually complained about the discrimination and attempted numerous times to resolve the issues, including filing a grievance with her labor union on February 19, 2016.

75. On February 29, Ms. Trust sent her grievance to Dean Lambert and the School's Division of Continuing Education management, which was ignored.

76. As part of the grievance process, Ms. Trust began to meet with Regional Problem Solving team members. Due to Ms. Trust's termination, the ongoing meetings were prematurely cut off.

77. On September 15, 2016, the President of the Labor Union, Tasha Williams, informed Ms. Trust that the University had taken the position that it was not willing to remedy Ms. Trust's grievances. As a result, no solution was found and implemented.

78. On September 26, 2016 the University dropped Ms. Trust from a class she had preregistered in at the Harvard Extension School, causing her to lose the opportunity to work towards her Master's Degree.

79. Ms. Trust has exhausted her administrative remedies with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

## Causes of Action

(Each Cause Of Action Incorporates Therein
All Of The Paragraphs Set Forth, Hereinabove.)

### FIRST CAUSE OF ACTION – SEX / GENDER DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq. & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC CHAPTER 2000e et seq.

80. This is a cause of action against the Defendant for sex / gender discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

81. The Plaintiff was subjected to sex-based discrimination which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do her job.

82. The Plaintiff was paid less than her male counterparts for doing the same work.

83. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

### SECOND CAUSE OF ACTION – DISABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq. & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC CHAPTER 2000e et seq.

84. This is a cause of action against the Defendant for disability discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et seq.

85. The Plaintiff was subjected to disability discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do her job.

86. As a result of the Defendant's unlawful discrimination, the Plaintiff has suffered damages.

### THIRD CAUSE OF ACTION – DISABILITY DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq. & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC CHAPTER 2000e et seq.

87. This is a cause of action against the Defendant for disability discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et seq.

88. The Plaintiff was subjected to disability discrimination as the result of Defendant's failure to engage in the interactive process and/or as the result of Defendant's failure to provide Plaintiff a reasonable accommodation, which interfered with the Plaintiff's ability to do her job.

89. As a result of the Defendant's unlawful discrimination, the Plaintiff has suffered damages.

### FOURTH CAUSE OF ACTION – RETALIATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq. & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC CHAPTER 2000e et seq.

90. This is a cause of action against the Defendant for retaliation in violation of Massachusetts General Laws Chapter 151B§ 1 et seq.

91. As the result of complaining about the Defendant's unlawful gender discrimination, unequal pay, and disability discrimination the Defendant retaliated against Plaintiff by giving her less favorable job assignments and opportunities.

92. As the result of complaining about the Defendant's unlawful gender discrimination, unequal pay and disability discrimination Defendant retaliated against Plaintiff by terminating her employment.

93. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

### FIFTH CAUSE OF ACTION – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 29 U.S.C. CHAPTER 28

94. This is a cause of action against the Defendant for violation of the FMLA.

95. Ms. Trust suffered a serious health condition.

96. Ms. Trust worked at least 1,250 hours during the last 12 months and is otherwise covered under the FMLA.

97. The Defendant employs 50 or more employees and is otherwise covered by the FMLA.

98. The Defendant interfered with Ms. Trust's right to take FMLA.

99. As a result, Ms. Trust has suffered damages.

### SIXTH CAUSE OF ACTION – RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 29 U.S.C. CHAPTER 28

100. This is a cause of action against the Defendant for retaliation in violation of the FMLA.

101. The Defendant retaliated against Ms. Trust by terminating her employment as a direct result of taking leave under the FMLA.

102. As a result, Ms. Trust has suffered damages.

*The Plaintiff demands a jury trial on all triable issues.*

WHEREFORE, the Plaintiff hereby requests that this Honorable Court grant the following relief:

1. Judgment against the Defendant;

2. An award of back pay and front pay;

3. Attorney's fees, costs and expert witness fees;

4. Compensatory damages for emotional distress;

5. Punitive damages pursuant to MGL c. 151B, § 9;

6. Pre-Judgment and Post-Judgment Interest, and

7. Such other relief as the Court deems just and fair.

January 3, 2017

The Plaintiff,
Samira Trust,
By her attorney,

Suzanne L. Herold (BBO# 675808)
Herold Law Group, P.C.
285 Commandants Way
Chelsea, MA 02150
(617) 336-7196 (t)
(617) 398-2730 (f)
suzie@heroldlawgroup.com

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 17-CV-00017

Samira Trust, Plaintiff(s)

v.

Harvard University, Defendant(s)

## SUMMONS

To the above-named Defendant: Harvard University

You are hereby summoned and required to serve upon Suzanne L. Herold, Herold Law Group, P.C. plaintiff's attorney, whose address is 285 Commandants Way, Chelsea, MA 02150, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center, Woburn, MA 01801 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at ..................................................
the 10th day of January
..................., in the year of our Lord 2017.

................................................., Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1781CV00017 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Samira Trust vs. Harvard University | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: Suzanne L Herold, Esq. Herold Law Group, P.C. 285 Commandants Way Chelsea, MA 02150 | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                                                                                                **DEADLINE**

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 04/03/2017 |  |
| Response to the complaint filed (also see MRCP 12) |  | 05/03/2017 |  |
| All motions under MRCP 12, 19, and 20 | 05/03/2017 | 06/02/2017 | 07/03/2017 |
| All motions under MRCP 15 | 05/03/2017 | 06/02/2017 | 07/03/2017 |
| All discovery requests **and depositions** served and non-expert despositions completed | 10/30/2017 |  |  |
| All motions under MRCP 56 | 11/29/2017 | 12/29/2017 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 04/30/2018 |
| Case shall be resolved and judgment shall issue by |  |  | 01/03/2019 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time. Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 01/03/2017 | Patricia M McCann |  |

Date/Time Printed: 01-03-2017 14:58:41                                                                                            SCV026\ 11/2014

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| PLAINTIFF(S): Samira Trust <br> ADDRESS: Boston, MA | | COUNTY Middlesex |
| | | DEFENDANT(S): Harvard University |
| ATTORNEY: Suzanne Herold, Esq. <br> ADDRESS: Herold Law Group, P.C. <br> 285 Commandants Way <br> Chelsea, MA 02150 <br> BBO: 675808 | | ADDRESS: 1350 Mass. Ave. Ste 980 <br> Cambridge, MA |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES  ☐ NO |

*If "Other" please describe: Family Medical Leave Act

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ..... $
  2. Total doctor expenses ..... $
  3. Total chiropractic expenses ..... $
  4. Total physical therapy expenses ..... $
  5. Total other expenses (describe below) ..... $
    Subtotal (A): $
B. Documented lost wages and compensation to date ..... $ 30,000.00+
C. Documented property damages to dated ..... $
D. Reasonably anticipated future medical and hospital expenses ..... $
E. Reasonably anticipated lost wages ..... $
F. Other documented items of damages (describe below) ..... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury: T.B.D.

Emotional Distress

TOTAL (A-F): $ 30,000.00+

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $

Signature of Attorney/Pro Se Plaintiff: X                                           Date:

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X                                              Date: 1-3-17